UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**GLORIA MARIE SMITH**                                    **CIVIL ACTION**

**VERSUS**                                                **NUMBER: 20-2610**

**SOCIAL SECURITY ADMINISTRATION**                        **DIVISION "5"**

### ORDER AND REASONS

Plaintiff Gloria Marie Smith filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"). The matter has been fully briefed on cross-motions for summary judgment and the issues are thus ripe for review. For the following reasons, Plaintiff's motion for summary judgment is hereby **DENIED** and the Commissioner's cross-motion is **GRANTED**. Plaintiff's case will be **DISMISSED WITH PREJUDICE**.

**I.     BACKGROUND**

Plaintiff filed her application for SSI on May 4, 2018, alleging a disability onset date of July 20, 2006. (Adm. Rec. at 138, 145). Plaintiff alleged disability due to a knee problem, a back problem, a stomach problem, a hip problem, headaches, sinus problems, and vision problems. (*Id.* at 155). Plaintiff, born on March 28, 1967, was 39 years old on the date on which she alleged disability and 51 years old on the date that she filed her application. (*Id.* at 152). Plaintiff has a high school education, (*id.* at 156), and she has past work experience as a crew member in the fast-food industry. (*Id.* at 157).

Defendant initially denied Plaintiff's application on September 10, 2018. (*Id.* at 79-87). Plaintiff sought an administrative hearing, which Defendant held on August 6, 2019. (*Id.*

at 34-54). Plaintiff and a vocational expert ("VE"), Kasey C. Crawford-Suggs, testified at the hearing.

On November 7, 2019, the ALJ issued a decision in which he concluded that Plaintiff is not disabled. (*Id*. at 17-28). In the decision, the ALJ concluded that Plaintiff has the severe impairments of degenerative joint disease in the knees and lumbar spine, as well as obesity. (*Id.* at 20). The ALJ ultimately held, however, that Plaintiff does not have an impairment or a combination of impairments that meets or medically equals a listed impairment under the regulations. (*Id.* at 21). The ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform light work activity as defined in 20 C.F.R. § 404.1567(b) except that Plaintiff can never climb ladders, ropes, or scaffolds. (*Id.* at 21). She can occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl. (*Id.*). She can also frequently balance when walking on narrow, slippery, or uneven surfaces. (*Id.*). Ultimately, the ALJ concluded that Plaintiff can perform work as a food preparation worker, a cashier, and a receptionist and information clerk. (*Id.* at 28). The ALJ thus denied Plaintiff SSI. (*Id.*).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that she is not disabled. On July 23, 2020, the Appeals Council denied Plaintiff's appeal. (*Id.* at 1-6). Plaintiff then timely filed this civil action.

II.     **STANDARD OF REVIEW**

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496

(5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues de novo, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey*, 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

### III.     ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, Plaintiff must show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is considered disabled only if a physical or mental impairment is so severe that the claimant is unable to do not only previous work, but cannot, considering age, education and work experience, participate in any other kind of substantial gainful work that exists in significant volume in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she or he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.  *Id.* §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.  First, the claimant must

4

not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Id.* at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999)). If the ALJ determines that a Plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make a disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

**IV.   ISSUE ON APPEAL**

There is one issue on appeal:

(1)   Whether substantial evidence and relevant legal standards support the ALJ's RFC assessment.

**V.   ANALYSIS OF THE SOLE ISSUE ON APPEAL**

The ALJ has the sole responsibility to evaluate a claimant's RFC based on the entirety of the medical evidence in the record. 20 C.F.R. § 416.946(c). In this case, the Court finds that substantial evidence supports the ALJ's decision that Plaintiff retained the RFC to perform a reduced range of light work. (Adm. Rec. at 21). Defendant argues that the ALJ's analysis reveals a thorough consideration of the medical evidence and an appropriate assessment of Plaintiff's impairments. (*Id.* 21-27). Plaintiff does not contest the limitations that the ALJ included in the RFC assessment, nor does she claim that the ALJ should have included other limitations in his RFC assessment. Plaintiff only argues that the ALJ should have adopted the check-the-box form opinion offered by her treating physician.

Plaintiff first contends that the ALJ erred when he concluded that the opinion of the State agency reviewing physician, Emily Eisenhauer, M.D., was persuasive. (*Id.* at 26-27, 72-74). As the ALJ noted, on November 14, 2018, Eisenhauer reviewed the evidence of record and opined that Plaintiff retained a light RFC with additional limitations that she could never climb ladders, ropes or scaffolds; occasionally climb stairs; occasionally stoop, kneel, crouch, and crawl; and frequently balance. (*Id.* at 26-27, 72-74). The ALJ found this opinion persuasive because it was consistent with the medical evidence in the record and the positive findings on examination of decreased range of motion of the knee and pain with range of motion of the back, as reflected throughout Plaintiff's treatment records. (*Id.* at 26-27, 72-

6

74). The ALJ properly considered the State Agency medical consultant who reviewed the evidence concerning Plaintiff's RFC. (*Id.* at 26-27, 72-74). An ALJ must consider their opinions, along with the other evidence of record, as state agency physicians are considered highly qualified experts in disability evaluation. *See* 20 C.F.R. § 416.927; Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2 (". . . [F]indings of fact made by State agency medical and psychological consultants and other program physicians and psychologists become opinions at the administrative law judge and Appeals Council levels of administrative review and requires administrative law judges and the Appeals Council to consider and evaluate these opinions when making a decision in a particular case. . . State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act.").

Plaintiff argues that the ALJ erred when he found Eisenhauer's opinion consistent with her medical records because, after Eisenhauer's review of the record, Plaintiff underwent a magnetic resonance imaging ("MRI") of the lumbar spine, which "showed more issues." (Rec. doc. 19 at pp. 4-5). However, the Court finds that the ALJ's analysis of the evidence of record and Plaintiff's RFC assessment did not comprise the entirety of Eisenhauer's review.

Plaintiff underwent an MRI of the lumbar spine in April 2019. (*Id.* at 25, 714-715). Results revealed degenerative findings inferiorly, without significant spinal canal or neural foraminal stenosis, and severe degenerative facet change at L4-L5 with a marrow edema pattern within the bilateral pedicles of L5 that may correlate to focal symptoms. (*Id.* at 25,

715). It also revealed a similar marrow edema pattern within the right lateral mass of S1. (*Id.* at 25, 715). On April 16, 2019, Plaintiff's treating physician, Anu Vellanki, M.D., reviewed the MRI results with Plaintiff, informing her that the only significant findings were in L4 facet joint arthritis. (*Id.* at 25, 674). Vellanki advised Plaintiff that surgery was not needed based on the MRI results. (Tr. 25, 674). Vellanki's interpretation does not indicate that greater limitations to Plaintiff's RFC were warranted.

Plaintiff also argues that the ALJ should have considered a November 2018 computed tomography ("CT") study of her chest and October 2018 lumber spine x-rays. (*Id.* at 502, 713). However, the CT of Plaintiff's chest was "stable," and the lumbar spine x-ray was unremarkable. (*Id.* at 502, 713). These records of the CT do not strengthen Plaintiff's argument.

Plaintiff also argues that a July 3, 2019 check-the-box form completed by Vellanki at the request of Plaintiff's counsel was the only medical opinion to have the benefit of the MRI and should have been found more persuasive than Eisenhauer's opinion. The ALJ specifically considered the opinions of Vellanki. As the ALJ outlined, Vellanki, on the July 3, 2019 form, listed diagnoses of back pain, obesity, and osteoarthritis. (*Id.* at 26, 718). Vellanki opined that Plaintiff's symptoms would constantly be significant enough to interfere with concentration and attention. (*Id.* at 26, 718). Vellanki noted that one of Plaintiff's medications had side effects that would impact her ability to work, but she did not specifically identify what the side effects were. (*Id.* at 26, 718). She opined that Plaintiff was able to walk one block, but that she was limited to sitting for a total of one hour out of an eight-hour workday and standing/walking for a total 30 minutes out of an eight-hour workday. (*Id.* at 26, 718).

8

Vellanki also opined that Plaintiff would need to take five breaks of 15 minutes each during the day; she limited Plaintiff to occasionally lifting less than 10 pounds and never lifting 10 pounds or more; and she opined that Plaintiff had no limitation in reaching, handling, or fingering, and was able to perform fine and gross manipulation and reaching for 80% of the workday, bilaterally. (*Id.* at 26, 718). Finally, Vellanki estimated that Plaintiff would miss work more than four times a month. (*Id.* at 26, 719).

Vellanki's opinion did not persuade the ALJ that Plaintiff had such extreme limitations inconsistent with the medical evidence, including Vellanki's own contemporaneous progress notes, which did not reflect such restrictions. (*Id.* at 26). In a number of progress notes dating from October 2018 through May 2019, Vellanki stated that Plaintiff "cannot can" ambulate independently, (*id.* at 25, 671, 675, 679, 683, 687), thus rendering her opinion unclear regarding Plaintiff's ability to ambulate. However, at those same appointments, Vellanki found that Plaintiff's motor and sensory function, reflexes, gait and coordination were intact, which supports a conclusion that Plaintiff was able to ambulate independently. (*Id.* at 25, 672, 676, 680, 684, 688, 691, 694). Vellanki further noted that Plaintiff can bathe herself, clean the house, control her bladder, control her bowel function, cook meals, converse in a meaningful way, dress herself, drive a car, feed herself, find her way home, live alone, recognize familiar faces, ride public transportation, remember her name, do her own shopping, remember where she lived, and remember dates. (*Id.* at 25, 671, 675, 679, 683, 687, 690, 693, 698, 702, 706). Positive findings on examination were generally only decreased range of motion of the bilateral knees on extension, (*id.* at 698, 702, 706), and, on

9

some occasions, pain with range of motion in the back occurred. (*Id.* at 25, 672, 676, 680, 684, 688, 691, 694).

The ALJ reviewed a note that Plaintiff arrived with a cane in January 2019, but no gait abnormalities were indicated. (*Id.* at 25, 692, 694). Indeed, Vellanki opined that same day that Plaintiff was able to ambulate independently. (*Id.* at 25, 692, 694). The most recent treatment notes from Vellanki date from a visit on July 29, 2019. (*Id.* at 26, 739-741). Plaintiff's complaints and findings on examination were similar to other recent visits; she exhibited decreased range of motion in bilateral knee extension and had pain with range of motion in the back. (*Id.* at 26, 739-741). As noted, Vellanki opined that at the claimant's current level of functioning, "she can control her bowel function, [c]onverse in a meaningful manner, dress herself, feed herself, [f]ind[] [her] way home, recognize familiar faces, ride public transportation, remember her name, remember where she lives and remember the date. She cannot bathe self, [c]lean[] the house, control her bladder, [c]ook meals, drive a car, live alone, do [her] own shopping or can ambulate independently." (*Id.* at 740, 743, 746). The ALJ noted that the wording was unclear as to whether Vellanki was stating that Plaintiff was or was not able to perform certain activities after the limitation that she could not bathe herself. (*Id.* at 26, 740). The Court finds that Vellanki's opinions are thus somewhat unreliable as her word usage was not always clear or succinct as to what Plaintiff's actual limitations are.

On July 3, 2019, the day Vellanki signed the check-the-box form opinion – the same form on which Plaintiff argues that the ALJ should have relied. (*Id.* at 718). Notes related to a neurological examination indicated that Plaintiff's reflexes, gait, and coordination were all

10

intact. (*Id.* at 744, 748). Stated limitations and findings on examination were essentially the same as at visits in June and July 2019. (*Id.* at 744, 748).

Plaintiff argues that the ALJ failed to compare Eisenhauer's opinion to more significant evidence that postdated her opinion. However, the ALJ devoted a large section of his opinion to an analysis of the more recent evidence. (*Id.* at 24-26). An ALJ is not required to base his decision on the opinion of any one physician, and Plaintiff is remiss in failing to recognize that the determination of her RFC is the ALJ's *sole* responsibility, not the responsibility of any physician or this Court. *Taylor v. Astrue*, 706 F.3d 600, 602-603 (5th Cir. 2012) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)).

In this case, and after a detailed analysis of the medical evidence, the ALJ found that Vellanki's dramatic limitations were simply not supported by the medical evidence in the record. (Adm. Rec. at at 27). It is axiomatic that an ALJ is free to reject the opinion of any physician when the medical evidence of record supports a contrary conclusion. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995) (holding that good cause for abandoning a treating physician's opinion includes statements that are brief, conclusory, and not supported by medically acceptable clinical laboratory diagnostic techniques, or when it is otherwise unsupported by the medical evidence in the record).

Rare is the case in which an ALJ's RFC perfectly conforms to the opinion of a treating, or even examining, physician. Instead, as here, the ALJ must assess all of the objective and subjective evidence and formulate the RFC from that analysis, and it is the ALJ's duty to resolve conflicts in the opinions of treating and examining physicians, not the duty of this

Court. *See Martinez v. Chater*, 64 F.3d at 174 (holding that the Commissioner, not the courts, must resolve conflicts in the evidence).

Given the ALJ's consideration of the "unpersuasive" opinions of Vellanki, Plaintiff also maintains that the ALJ should have ordered a consultative examination. The decision to order a consultative examination is fully within the ALJ's sound discretion. *See Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). In this lawsuit, the Court has already found that there was sufficient evidence for the ALJ to decide that Plaintiff did not have a disabling impairment and, therefore, that no additional consultative examination was required.

The Court finds that the ALJ's analysis reveals a thorough consideration of the medical evidence and an appropriate assessment of Plaintiff's impairments and RFC. The final responsibility for the determination of an individual's RFC and the ultimate question of whether an individual is "disabled" under the Act are issues reserved to the Commissioner, not this Court. *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (finding that the ALJ is responsible for determining the RFC). "It is, of course, for the [Commissioner] to decide what weight to accord various medical reports." *Johnson v. Bowen,* 864 F.2d 340, 347 (5th Cir. 1988). The Court finds that Plaintiff raises no reversible error, and the opinion of the ALJ stands.

## VI. Conclusion

For the foregoing reasons,

Plaintiff's Motion for Summary Judgment (Rec. doc. 19) is **DENIED**, Defendant's Cross-Motion for Summary Judgment (Rec. doc. 20) is **GRANTED**, and Plaintiff's complaint is **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this <u>30th</u> day of <u>      November      </u>, 2021.

                                                                                           **MICHAEL B. NORTH**
                                                                    **UNITED STATES MAGISTRATE JUDGE**